Argued December 8, 1960, reversed with instructions
March 8, petition for rehearing denied
April 11, 1961

# GWYNN *v.* WILHELM

360 P. 2d 312

*Otto R. Skopil, Jr.,* Salem, argued the cause for appellant. On the brief were Williams & Skopil, Salem.

*Arthur C. Johnson,* Eugene, argued the cause for respondent. On the brief were Johnson, Johnson & Harrang, Eugene, and Harry G. Hoy, Oceanlake.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN and KING, Justices.

McALLISTER, C.J.

This is an action against a physician to recover damages for malpractice in treating a fractured arm and other injuries sustained by plaintiff in a fall. The trial court held that this action was barred by the default judgment of a justice's court in an action by the physician to recover the value of her professional services. Plaintiff appeals.

The sole question presented is whether a judgment by default in an action in a justice's court by a physician against his patient to recover for his professional services is a bar to an action by the patient to recover damages resulting from malpractice in the performance of such services.

Plaintiff filed this action on April 17, 1957 in the circuit court for Lincoln county to recover damages for the alleged malpractice of the defendant in treating plaintiff for injuries sustained in a fall at her home on December 18, 1955. Defendant answered with a general denial.

On August 7, 1958, the Lincoln Adjustment Service, Inc., a collection agency, filed an action in the

justice's court for Lincoln county against the plaintiff and her husband to recover the sum of $204.50 for Dr. Wilhelm's professional services in caring for plaintiff, which cause of action the doctor had assigned for collection to the collection agency. Neither plaintiff nor her husband appeared in said action and on August 26, 1958, a default judgment was entered against them for the amount demanded.

On September 14, 1959, defendant filed in the case at bar a supplemental answer pleading the justice's court judgment as a bar to this action. Plaintiff demurred to the supplemental answer on the ground that it did not state facts sufficient to constitute a defense. The trial court overruled the demurrer, found that the judgment of the justice's court was a bar to further proceedings and dismissed plaintiff's complaint.

■ In applying the doctrine of *res judicata* it is necessary first to determine whether the second action is upon the same cause of action as the first or whether the two actions are upon different causes of action. If the second action is upon the same cause of action the judgment in the first action is conclusive as to all matters which were litigated or which might have been litigated in the first action. If the second action is upon a different cause of action, the judgment in the first action is conclusive only as to the matters essential to the judgment which were actually litigated and determined therein. If the two actions are upon different causes of action, the applicable rule, now generally called "collateral estoppel", is stated in Restatement, Judgments § 68, p 293, as follows:

"(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is

conclusive between the parties in a subsequent action on a different cause of action, except as stated in §§ 69, 71 and 72.

"(2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action."

The rule as stated above has been the law in Oregon since an early day. See *Applegate v. Dowell,* 15 Or 513, 524, 16 P 651; *White v. Ladd,* 41 Or 324, 332, 68 P 739; *Ruckman v. Union Railway Co.,* 45 Or 578, 581, 78 P 748, 69 LRA 480; *Farmers & Fruit-Growers' Bank v. Davis,* 93 Or 655, 665, 184 P 275; *Beezley et al. v. City of Astoria,* 126 Or 177, 187, 269 P 216; *Winters v. Bisaillon,* 153 Or 509, 513, 57 P2d 1095; *Wagner v. Savage, as Adm'r.,* 195 Or 128, 147, 244 P2d 161; and *State of Oregon v. Dewey,* 206 Or 496, 504, 292 P2d 799.

■ The doctrine of *res judicata,* including collateral estoppel, as to matters essential to the judgment, applies to judgments by default. See *White v. Ladd,* supra; *J. W. Copeland Yards v. Sheridan et al.,* 136 Or 37, 296 P 838, 297 P 837; *Butler v. Maas,* 163 Or 201, 94 P2d 1116; *State ex rel Nilsen v. Bean,* 218 Or 506, 346 P2d 652; and *Buck v. Mueller,* 221 Or 271, 351 P2d 61.

■ The fact that the action in the justice's court was brought by an assignee is not material since the rule is well settled that a judgment is binding on both parties and their privies. It seems equally well settled that where the assignment is for collection only, the assignor and assignee are in privity. *Clark v. Andrews,* 109 Cal App2d 193, 240 P2d 330; *Rauer's Law & Collection Co. v. Higgins,* 76 Cal App2d 854, 174 P2d 450; *Doxen v. Wagner,* 142 Md 441, 121 A 254;

*Titus v. Miller,* 132 NJ Eq 541, 29 A2d 550; 1 Freeman on Judgments (5th ed) 971, § 443 and 6 CJS 1151, Assignments § 94.

■ In the case at bar it is obvious that the two actions were upon two different causes of action, plaintiff's cause of action for malpractice and defendant's cause of action for the value of her services. Under this circumstance the judgment entered in the justice's court is conclusive only as to matters essential to the judgment which were actually litigated and determined therein.

■ Plaintiff relies on *Buck v. Mueller,* supra, but we think that case is not conclusive here. It is true, as held in *Buck,* that in the absence of a compulsory counterclaim statute, the defendant is not required to set up a counterclaim and his failure to do so does not preclude him from bringing a separate action against the plaintiff on the separate cause of action which was available to him as a counterclaim. This rule, however, is subject to the qualification that a party can not recover in a separate action on a cause of action which he failed to plead in a prior action by way of setoff or counterclaim but which was necessarily adjudicated by the former judgment. See *A.B.C. Truck Lines, Inc., v. Kenemer,* 247 Ala 543, 25 So2d 511; *Paccalona v. Peninsula Bank & Lumber Co.,* 171 Mich 605, 137 NW 518; *Warshor v. Warshor,* 139 Misc 262, 223 NYS 705; *Moore v. Harjo,* 144 F2d 318 (10th Cir 1944); *Henley v. Panhandle Eastern Pipeline Co.,* 138 F Supp 768 (WD Mo 1956); *Wright v. Walling,* 159 F Supp 190 (WD Ark 1958); 30 Am Jur 434, Judgments § 386; 50 CJS 136, Judgments § 684; and annotation, 8 ALR 694, 727. If the exercise of due care and skill by defendant in caring for plaintiff was essential to the judgment and was

actually litigated and determined in the justice's court, plaintiff would be estopped by the judgment.

This case turns then on whether the exercise of due care and skill by defendant in caring for plaintiff was actually litigated and determined in the justice's court. With the exception of New York, all of the states passing on the question have held that a default judgment in an action by a physician to recover the value of his services does not estop the patient from maintaining an action for malpractice in the performance of such services. These include cases in which the judgment against the patient was taken by default, *Sykes v. Bonner,* 1 Cinn Super 464; *Goble v. Dillon et al.,* 86 Ind 327; *Lawson v. Conaway,* 37 W Va 159, 16 SE 564; *Jordahl v. Berry,* 72 Minn 119, 75 NW 10; *Fall v. Bennett,* 248 F 491 (8th Cir 1918) and cases in which the patient appeared but did not allege malpractice either as a defense, a counterclaim or by way of recoupment, *Ressequie v. Byers,* 52 Wis 650, 9 NW 779; *Barton v. Southwick,* 258 Ill 515, 101 NE 928; *Sale v. Eichberg,* 105 Tenn 333, 59 SW 1020. Others cases disapprove the New York rule but nevertheless hold that the patient's action for malpractice was barred because he had appeared in the physician's action for services and alleged the malpractice as a defense. *Leslie v. Mollica,* 236 Mich 610, 211 NW 267, 49 ALR 546 and, as to one of two defendants, *Goble v. Dillon et al.,* supra.

The New York rule was first stated in *Bellinger v. Craigue,* 31 Barb 534 and was followed in *Gates v. Preston,* 41 NY 113 and *Blair v. Bartlett,* 75 NY 150, 31 AR 455. For other later New York cases see Annotations, 49 ALR 551, 128 ALR 473, 502. The rationale of the New York rule was concisely sum-

marized in the Minnesota case of *Jordahl v. Berry,* supra, as follows:

> "After starting out with the conceded proposition that a judgment is conclusive of every fact necessary to uphold it, whether the final determination is the result of litigation, or of a default of one of the parties, the reasoning of those who advocate the New York doctrine may be summed all up as follows: If the services were of value, they could not have been useless; and, if not harmful, there could not have been malpractice in the performance of them; therefore a judgment that the services were of value necessarily involved a determination that they were properly performed; and that such an adjudication is necessarily inconsistent with the existence of a claim by the patient for damages for malpractice in their performance." (72 Minn at 124)

The cases from other states heretofore cited, for the most part, have considered the New York rule and have expressly refused to follow it. One or both of two reasons are generally given to support the holding in these cases. The first is stated in *Sykes v. Bonner,* supra, as follows:

> "In looking into the justice's record, it appears that the judgment against the plaintiff for the professional services of the defendant was taken by default, and on the testimony of the defendant himself only. It was certainly not necessary, in order to entitle the plaintiff in that case to recover, that he should prove that he was not guilty of any negligence in his professional treatment. It was enough to show, simply, that he performed the service at the defendant's request and their value, and the fact that the amount was due. There were no pleadings and no issues. There is nothing in the record to show that the question of negligence was involved."

The second reason generally assigned by the other

courts is the impracticability of the New York rule and its liability to work injustice. This view is illustrated by the following quotation from *Jordahl v. Berry,* supra:

> "The inconvenience of the New York rule, and its liability to work injustice, is further illustrated by the present case. It furnishes an opportunity to create an estoppel by what may not unfairly be called a snap judgment. It is perhaps not uncharitable to surmise that this may have been the very object of defendants in bringing their actions in justice court. But, this aside, if plaintiff has appeared and defended those actions, he would have been put to the alternative of alleging the malpractice as a mere defense, or of setting it up as a cross claim. In either case the judgment would be a bar or estoppel on that issue. If he had adopted the latter course, he could only have recovered $100, the limit of the justice's jurisdiction, and could never have recovered any more in another suit, because he would not be allowed to split a single cause of action. On the other hand, had he set up the malpractice merely as a defense, and the claims of the defendants for services were less than $15, the issue, involving a claim of $5,000, would have been conclusively determined by the judgment of the justice, from which neither party could appeal on facts. We concede that such considerations are not, in themselves, of any force, except as illustrating the inconvenience of such a rule; but where it is open to the court, upon principle, to choose between two rules, they are entitled to weight."

The New York rule was condemned by the Supreme Court of Indiana in the case of *Goble v. Dillon et al.,* supra, in the following language:

> "In New York *res judicata,* as to the negligence and unskilfulness, is made to depend upon the former judicial determination of the question of

the value of the services, in the absence of any necessary consideration of the injury to the defendant, which, if considered, but not otherwise, would have led to a determination that the services were valueless. Such an estoppel may well be characterized as odious. One is struck with the frequency with which, in the reported cases, the suits for the services have been brought after the commencement of the actions for malpractice, as if for the purpose, which is sometimes declared, of preparing a defence (sic) for those actions. We have spoken of the hardship which may be imposed upon the plaintiff in the action for malpractice, if he be required at all events to defeat the claims for professional services. We are unwilling to extend the estoppel beyond the requirement of established principles."

The Restatement has adopted the majority view as opposed to the New York rule. Restatement, Judgments § 58, p 232, comment b, illustration 3 reads as follows:

"A, a physician, brings an action against B for medical services rendered to B. B fails to plead and judgment by default is given against him. B is not precluded from subsequently maintaining an action against A for malpractice and recovering for harm done to him by such malpractice."

The impracticability of and the possible injustice resulting from the New York rule is demonstrated by the case at bar. Since the action in the justice's court was commenced by an assignee, plaintiff could not have filed a counterclaim but would have been limited to pleading the malpractice by way of recoupment to the extent of $204.50. If successful, she would then have been faced in her own action with the plea that her cause of action for malpractice was indivisible and could not be split and employed in the justice's

court as an affirmative defense and also, employed in the circuit court as a basis for her malpractice action. It is not necessary to now decide whether such a plea would estop plaintiff from maintaining the subsequent action. Such a plea prevented recovery by the plaintiff in *Leslie v. Mollica,* supra, even though she had established the malpractice in the justice's court. We note that the Restatement adopts a contrary view. See Restatement, Judgments § 58, p 234, comment d.

This is a case of first impression in Oregon and we also decline to follow the New York rule. We agree with those courts which have held that in cases such as this, the question of malpractice was not litigated and determined by the default judgment in the justice's court.

Reversed with instructions to sustain plaintiff's demurrer to defendant's amended supplemental answer.