Argued and submitted March 12, 1986, reversed and remanded March 11, 1987

In the Matter of the Compensation of
Kathy K. Calkins, Claimant.

CALKINS,
*Petitioner,*

*v.*

WESTCRAFT CHAIR, INC. et al,
*Respondents.*

(WCB 84-02419; CA A36874)

733 P2d 943

L. Leslie Bush, Portland, argued the cause for petitioner. With him on the brief was Tamblyn & Bush, Portland.

Edward C. Olson, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Warren and Deits, Judges.

DEITS, J.

## DEITS, J.

Claimant seeks review of an order of the Workers' Compensation Board, upholding the referee's order which granted employer's motion to dismiss her claim for compensation for a hip injury. The motion was granted on the ground that the hip claim is barred by *res judicata.* Because we hold that the claim was not barred, we reverse and remand.

Claimant was employed as a sewing machine operator. In September, 1980, she was injured at work when a furniture frame fell on her. Her claim for compensation was accepted and processed to closure on February 12, 1981. For several months before that injury, she had been experiencing pain in her right hip. She attributed the pain to difficulties in operating a defective sewing machine at work and reported the pain to her employer. She did not, however, file a formal claim for compensation for the hip condition at that time.

The difficulty in this case arises because the nature and extent of the injury claimed by claimant and accepted by the carrier is unclear. Generally, the injury is described in the medical reports as a low back and neck injury, but claimant was treated for her hip problems when she was treated for the September injury and employer's carrier paid for those treatments.

The question of whether the hip injury relates to the 1980 accident first arose in August, 1982. At that time, the carrier had claimant examined by an independent physician. He concluded:

"In listening to the patient's recountation [*sic*] of the mechanism of injury, I can certainly understand the spinal complaints but it is difficult for me to correlate the mechanism of injury with a right hip involvement. Again, addressing the issue of continuing palliative care, it is my opinion that such is not warranted with the spinal complaints, but such may be warranted relative to the right hip; however, as I have said, I do not understand the alleged mechanism of injury on a correlative basis with the right hip problem. Thus, I feel that it might be equitable for the patient to receive palliative treatment over the next 2-4 weeks, at which time I feel that she should be terminated."

On the basis of that physician's report, on November

1, 1982, the carrier sent a letter to claimant's treating physician purporting to deny all further palliative care. Claimant requested a hearing to contest the termination. The request stated in part:

"The issues are as follows:

"1. De facto denial of low back/hip problem and attorney's fees allowable on a denied claim."

Evidence concerning the origin and extent of the hip injury was presented in a hearing on May 26, 1983. In his opinion and order, the referee said:

"Even if a hip claim can be justified from the arguably vague reference by Dr. Hughey [claimant's treating physician] to 'pelvic hypotonicity,' he made no clear reference to hip treatment. In fact, no one mentioned the right hip until Dr. Kelley's IME two years later, and there he discounts any logical connection to the September 24, 1980 incident.

"* * * * *

"I find no duty to deny a nonexistent hip claim.

"ORDER

"The right hip claim is dismissed. Claimant is not entitled to a denial thereof."

The Board affirmed that order without opinion. Claimant then filed a specific claim for the hip injury. The carrier's *de facto* denial of that claim was contested in a hearing before another referee, who said:

"Notwithstanding some confusion at the prior hearing as to what the issues really were, and the fact that if reviewing this *de novo* I would probably come to a different conclusion, I agree with Mr. Olson that this claim is now barred by the doctrine of *res judicata*

"* * * * *

"Clearly the hearing before Referee Leahy involved the same issue which was litigated before me.

"ORDER

"It is therefore ordered that claimant's right hip claim is dismissed, and she shall take nothing by or through this proceeding."

On review, the Board again affirmed without opinion.

■ The principles of *res judicata* apply to workers' compensation cases. *See Million v. SAIF,* 45 Or App 1097, 610 P2d 285 (1980). As this court noted in *Conner v. Delon Oldsmobile Co.,* 66·Or App 394, 398, 674 P2d 1180 (1984), *res judicata* requires that, in a second litigation on the same cause of action, "[a]ny matters which plaintiffs did or could have litigated in the first action are barred if the cases are based on the same aggregate of operative facts which compose a single occasion for judicial relief."

■ We conclude that *res judicata* does not bar claimant's hip claim, because it was a separate claim which did not involve the same operative facts. The fact that claimant was treated at the same time for the hip injury and the injuries resulting from the furniture frame incident has caused confusion. However, the evidence demonstrates that there were separate injuries, that claimant did not file a claim for the hip injury before the first hearing and that the first referee properly treated the hip injury as a separate injury, requiring a separate claim.

The Board's affirmance of the second referee's dismissal of the hip claim on the ground of *res judicata* was improper.

Reversed and remanded.